**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| PATRICK O'DONNELL, WAYNE SAFFOLD, and MARK PAPENFUSS, individually and as representatives of a class of participants and beneficiaries on behalf of the CHARTER COMMUNICATIONS, INC. 401(K) SAVINGS PLAN,<br><br>        Plaintiffs,<br><br>    v.<br><br>CHARTER COMMUNICATIONS, INC. and JOHN DOES 1–10,<br><br>        Defendants. | Civil Action No. 25-157<br><br>JURY TRIAL DEMANDED |

**PITTS/JIMENEZ PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR**
**APPOINTMENT OF CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
**AS INTERIM CLASS COUNSEL (DOC. [18])**

# TABLE OF CONTENTS

I.   CHIMICLES SCHWARTZ IS WELL QUALIFIED AND BEST ABLE
     TO SERVE AS INTERIM CLASS COUNSEL ...................................................................

     A.    Class Members' Central Claim is the ERISA Equivalent
           of a Breach of Contract Claim .................................................................2

     B.    Chimicles Schwartz' Unparalleled Record Winning Classwide Breach
           of Contract Claims Make it Best Able to Prosecute Class Members' Claims .........3

           1.    Schlichter Bogard's Emphasis on Excessive Fee Cases is Misplaced.........4

           2.    O'Donnell Plaintiffs' challenges to Chimicles Schwartz'
                 experience in ERISA cases are wrong .........................................5

           3.    Chimicles Schwartz investigated and named individual
                 fiduciaries in anticipation of potential fiduciary delegation and
                 statute of limitations defenses....................................................8

     C.    The Relevant Rule 23(g) Factors Support Appointment of Chimicles Schwartz ....8

           1.    Chimicles Schwartz' work in identifying or investigating
                 class members' claims...............................................................8

           2.    Chimicles Schwartz' experience in class actions, other complex
                 litigation, and the types of claims asserted in the action.............................9

           3.    Chimicles Schwartz' knowledge of applicable law ...................................10

           4.    Chimicles Schwartz' resources and commitment ......................................11

           5.    Other Relevant Rule 23(g) factors favor Chimicles Schwartz..................13

V.   CONCLUSION...................................................................................................15

**CASES**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    240 F.R.D. 56 (E.D.N.Y. 2006) .............................................................................14

*In re Aurora Dairy Corp*.,
    2008 U.S. Dist. LEXIS 32189 (E.D. Mo. April 18, 2008) ....................................14

*Basile v. Valeant Pharms. Int'l, Inc.*
    2015 U.S. Dist. LEXIS 192315 (C.D. Cal. May 5, 2015) ......................................14

*Brown v. Accellion, Inc.*,
    5:21-cv-01155, 2023 U.S. Dist. LEXIS 23146 (N.D. Cal. Feb. 10, 2023) .............13

*Cappello v. Franciscan Alliance, Inc.*,
    2017 U.S. Dist. LEXIS 28474 (N.D. Ind. Feb. 28, 2017) .........................................2

*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*,
    2:23-cv-01447, 2024 U.S. Dist. LEXIS 104130 (D. Nev. Jun. 12, 2024) .........13, 14

*Khunt v. Alibaba Group Holding Ltd.*
    2021 U.S. Dist. LEXIS 31207 (S.D.N.Y. Feb. 18, 2021) ...................................14, 15

*Montag v. Volkswagen AG*,
    2021 U.S. Dist. LEXIS 169033 (C.D. Cal. July 21, 2021) ....................................14

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
    779 F.3d 1036 (9th Cir. 2015) .................................................................................9

*In re Parking Heaters Antitrust Litig.*,
    310 F.R.D. 54 (E.D.N.Y. 2015) ..............................................................................10

*Se. Mo. Hosp. v. C.R. Bard, Inc.*,
    No. 07-31-TCM, 2007 U.S. Dist. LEXIS 86392 (E.D. Mo. Nov. 21, 2007) ....................14, 15

**STATUTES**

29 U.S.C. 1104(a)(1)(D) .................................................................................................2, 11

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(g) ................................................................................................. *passim*

Rule 23(g)(1)(A) ................................................................................................. 8, 13

Rule 23(g)(ii) ................................................................................................. 10

Rule 23(g)(l)(B) ................................................................................................. 13, 16

# I. CHIMICLES SCHWARTZ IS WELL QUALIFIED AND BEST ABLE TO SERVE AS INTERIM CLASS COUNSEL

O'Donnell Plaintiffs' Opposition to the Motion of Plaintiffs Pitts and Jimenez seeking appointment of Chimicles Schwartz as Interim Class Counsel fails to focus on factors relevant to which firm is best able to represent class members *given the specific claims* raised in both the *Pitts/Jimenez* and *O'Donnell* complaints. While Schlichter Bogard has an excellent track record, the overwhelming majority of its practice the last two decades has been in ERISA excessive fee cases. Chimicles Schwartz also has an excellent, albeit less extensive, track record in excessive fee cases too.[1] But this is not an ERISA excessive fee case. The central claim here is ERISA's equivalent to a breach of contract claim. Extensive knowledge and experience in ERISA cases generally is important in determining which firm is best able to represent class members. But since both applicants for Interim Class Counsel have these qualifications, much more relevant here is counsel's experience and track record in prosecuting breach of contract claims. Rather than focus on that overarching issue, Schlichter Bogard myopically focuses on touting its outstanding, trailblazing record in excessive fee cases, which is not in dispute, and as a result, spills much ink on side issues. Chimicles Schwartz not only has extensive knowledge and experience prosecuting and defending breach of fiduciary duty claims under ERISA and under state law in the corporate and alternative entity context, but also has an unparalleled record in winning summary judgments in hotly contested breach of contract class actions. To the extent that the Court believes it must

---

[1] Notably, Plaintiffs' consulting expert served as Schlichter Bogard's testifying expert in several of its 401(k)/403(b) cases and as its consulting expert in several others. He also served as a testifying or consulting expert in dozens of other ERISA cases that resulted in recoveries of over $100 million for plan participants. Schwartz Reply Decl., ¶ 2. So to the extent the quantity of expertise in such cases is relevant, the Chimicles Schwartz team is well-qualified.

choose one firm or another to serve as Interim Class Counsel,[2] it is that experience and track record that should be the most relevant and outcome determinative factor in making that choice.

A.    **Class Members' Central Claim is the ERISA Equivalent of a Breach of Contract Claim**

As explained in Chimicles Schwartz' motion for appointment, the central claim in both *Pitts/Jimenez* and *O'Donnell* is for breach of the fiduciary duty to act in accordance with the Plan documents and instruments governing the Plan as required by 29 U.S.C. 1104(a)(1)(D), which is ERISA's functional equivalent of a breach of contract claim. *See* Doc. [18-2] at 7-8.[3] Sections 6.9 and 11.3 of the Charter 401(k) Plan promised that all Forfeited Assets "shall be used to pay Plan administrative expenses" and that "All expenses of administration of the Plan… shall be paid out of forfeitures… ." *Pitts/Jimenez* Complaint, ¶ 35. The explicit Plan provisions notwithstanding, Defendants failed to do so and instead used tens of millions of dollars from forfeitures to pay Charter's employer contributions. *Id.* ¶¶ 37, 39-64.

Unlike in excessive fee cases, in order to win the specific claims asserted here, class members need not prove that the amount of administrative expenses paid by the Plan were unreasonable or excessive. Nor do class members need to prove whether the Plan's fiduciaries acted prudently in choosing the Plan's vendors or the menu of services provided by those vendors, or whether other vendors could have provided similar or better services for a similar or better price. Rather, class members must prove (1) the meaning and proper construction of Sections 6.9 and

---

[2] Chimicles Schwartz repeats its great respect for Schlichter Bogard and its willingness to combine forces and jointly prosecute class members' claims, and expects no irreconcilable impediments in doing so. As observed in *Cappello v. Franciscan Alliance, Inc.,* 2017 U.S. Dist. LEXIS 28474, at *13 (N.D. Ind. Feb. 28, 2017), cited by O'Donnell Plaintiffs, Doc. [21] at 12 & n.5, one benefit of appointing both two firms is that it "would create an inherent system of checks and balances to ensure proper balancing of the issues affecting their class action."

[3] "Doc." page references are to the ECF header page number unless otherwise indicated.

11.3 of the Charter 401(k) Plan (including whether there are any ambiguities in those provisions); (2) what Plan expenses qualify as "Plan administrative expenses"; (3) the amount of Plan administrative expenses that were not paid with available Plan Forfeited Assets; and (4) whether damages can be enhanced via application of prejudgment interest, ERISA's attorney fee shift, or otherwise.[4] Proving these components of class members' claim is in Chimicles Schwartz' wheelhouse. Very few plaintiffs' firms have won full-recovery classwide summary judgments in complex, hotly contested breach of contract claims, particularly judgments that included not just liability but also damages. The skills used to create a legal and factual record establishing liability (including the effective use of extrinsic evidence to either protect against or defeat any arguments regarding textual ambiguities), defeating defendants' defenses, protecting against factual arguments designed to defeat summary judgment, and creating a factual record conclusively establishing damages in the face of competing expert reports, are the same skills necessary to prosecute class members' claims here. Skills and experience regarding the propriety of the amount of fees charged by a pension plan vendors are largely, if not wholly, irrelevant to prosecuting the claims asserted here.[5]

## B. Chimicles Schwartz' Unparalleled Record Winning Classwide Breach of Contract Claims Make it Best Able to Prosecute Class Members' Claims

---

[4] Class members might also seek appropriate injunctive, therapeutic or other equitable relief, but the propriety of such relief will likely be derivative of the claim for breach of contract damages.

[5] O'Donnell Plaintiffs cite Schlichter Bogard's excellent work in *Tussey v. ABB, Inc.* and *Tibble v. Edison Int'l*, as its prime examples of experience litigating and trying a case involving a plan document. *See* Opposition, Doc. [21], at 15-17. However, as O'Donnell Plaintiffs recognize, those cases at their core were both excessive fee cases that focused on whether plan fiduciaries acted prudently in choosing, and monitoring, plan vendors and record-keeping fees that they charged participants, and not the type of violation of plan documents/breach of contract claim at the core of this case. *See. e.g.*, *id.* at 16 (*Tussey* involved a "claim that ABB fiduciaries caused excessive administrative fees by violating a plan document (*i.e.,* an Investment Policy Statement)"; *Tibble* "case involved a claim that the fiduciaries violated the plan document, resulting in excessive administrative fees paid by plan participants").

As set forth in the Motion for Appointment, Mr. Schwartz' track includes securing a series of classwide settlements and *judgments* in breach of contract claims representing the full amount of class members' damages. *See* Doc. [18-2] at 16-19. In many of those cases, in addition to recovering a full recovery of out-of-pocket damages, he also recovered substantial amounts of interest and attorneys' fees. *Id.*; *see also* Reply Declaration of Steven A. Schwartz filed concurrently herewith ("Schwartz Reply Decl."), ¶ 3.[6] In many of those cases, class members received a *net* payment representing the full amount of their out-of-pocket damages plus interest, due to the separate recovery of attorney's fees or sanctions payments.[7] And in *In re Cigna-American Specialty Health Administrative Fee Litigation*, an ERISA class action which involved the same type of Section 1104(a)(1)(D) breach of plan contract claim as that asserted here, the $8.25 million settlement represented a near-full net recovery of the improper administrative fees.

O'Donnell Plaintiffs argue that the Chimicles Schwartz' track record in these cases is irrelevant. Not so. As with other aspects here, if Schlichter Bogard does not have it, they call it irrelevant.

### 1. Schlichter Bogard's Emphasis on Excessive Fee Cases is Misplaced

O'Donnell Plaintiffs spill much ink on Schlichter Bogard's track record in the excessive fee cases that has dominated that firm's practice over the last two decades. As noted above, this

---

[6] Cases where there was a significant recovery of interest include *Rodman v. Safeway*, *Shared Medical Systems (Siemens)1998 Incentive Compensation Plan Litig.*, *In re Aramark Bonus Litig.*, *In re Pennsylvania Baycol: Third-Party Payor Litig.*, *In Re ML Coin Fund Litig.*, and *Nelson v. Nationwide*.

[7] Those cases include all of the cases listed in footnote 4 above plus *Wolens v. American Airlines*, *Chambers v. Whirlpool Corp.*, *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig*, and *Wong v. T-Mobile*. In *Rodman v. Safeway*, the court also ordered Safeway to pay over $600,000 in attorneys' fees as a sanction for discovery abuses.

case is not in that genre and Schlichter Bogard's reflexive focus on that genre risks hindering the evaluation of the claims and crafting of the most effective strategy with an open mind and the creativity necessary to maximize the chances of success for the class, particularly against Defendants' skilled counsel Mayer Brown.[8] One of the reasons why Messrs. Schwartz and Kriner were so successful in cutting-edge ERISA cases based on novel and nuanced fiduciary duty claims like *Edward Asner v. SAG-AFTRA Health Fund* and *Snitzer v. Board of Trustees of the American Federation of Musicians Pension Plan* was their ability to think outside the box of the strategies and experiences ingrained in distinguished defense counsel, whose practices and therefore thinking were dominated by decades of specialization in ERISA cases.[9] O'Donnell Plaintiffs suggest Chimicles Schwartz' diverse practice is a negative. In fact, Chimicles Schwartz' diverse experience is a positive factor in its ability to best prosecute class members' claims. Given the apparently clear breach of the Plan terms here, Chimicles Schwartz expects Mayer Brown to assert novel defenses.

### 2. O'Donnell Plaintiffs' challenges to Chimicles Schwartz' experience in ERISA cases are wrong

O'Donnell Plaintiffs' arguments are factually off-base and mistake quantity for quality. First, Mr. Schwartz' extensive experience at the outset of his career representing defendant Firestone in the seminal *Firestone Tire & Rubber Co. v. Bruch* case provided a robust understanding of ERISA and its predecessor statutes. O'Donnell Plaintiffs seek to minimize the

---

[8] O'Donnell Plaintiffs place great emphasis on the number of cases were Schlichter Bogard faced Mayer Brown as defense counsel. *See* Opposition, Doc. [21], at 15. Besides being irrelevant, Mr. Schwartz has litigated various cases against Mayer Brown, including serving as lead counsel in appeals heard by the District of Columbia (which was an ERISA excessive fee case), and in the Seventh and Ninth Circuits. Schwartz Reply Decl., ¶ 10.

[9] Because those cases involved multi-billion-dollar Taft-Hartley plans, defendants were represented by Proskauer Rose and Cohen, Weiss & Simon, who are the top echelon of ERISA lawyers (just like Mayer Brown) with extensive experience representing both employer-side and employee-side of ERISA plan fiduciaries, in the role of pre-litigation fiduciary advisors and Plan counsel, and in the role as litigation counsel.

importance of Mr. Schwartz' experience in connection with the Circuit Court and Supreme Court proceedings and subsequent post-remand pretrial proceedings. *See* Opposition, Doc. [21], at 8-9. In fact, Mr. Schwartz' work in *Bruch* and related cases (including one pending in Arkansas which was settled shortly before trial), which dominated the first two years of his legal career, provided a strong base of knowledge that proved invaluable in prosecuting ERISA claims after he moved to the plaintiffs' side. O'Donnell Plaintiffs' notion that Mr. Schwartz' experience is irrelevant since *Firestone* involved a benefits denial claim misses the point given the extensive, sweeping analysis of ERISA that was litigated before the Supreme Court and the lower courts.[10]

Moreover, Mr. Schwartz' deep and varied experience with respect to ERISA cases is supplemented by his partner Mr. Kriner's 35 years of experience litigating fiduciary duties in the Delaware Courts and other courts across the country where he has attained a deep knowledge of the fiduciary duties of corporate directors, trustees and partners, which has proven invaluable in navigating and recognizing complex, novel breach of fiduciary duty issues in ERISA cases, particularly *Asner*, and *Snitzer*. *See* Motion, Doc. [18-2] at 10. Schlichter Bogard has little if any such experience. Leveraging Mr. Kriner's experience will greatly benefit the prosecution of class members' claims, particularly given the novel defenses expected to be asserted to the fiduciary misconduct claims here.

Similarly, O'Donnell Plaintiffs' arguments regarding Chimicles Schwartz' track record in representing plaintiffs in ERISA cases, are wrong. Reflecting the myopic focus on ERISA fee

---

[10] O'Donnell Plaintiffs also mistakenly assert that Mr. Schwartz did not join the Schnader Harrison firm in time to meaningfully participate in the proceedings in *Firestone* because the Third Circuit argument in *Bruch* occurred in December 1986 and the Supreme Court argument occurred in December 1988. Doc. [21] at 9. Mr. Schwartz was a summer clerk at Schnader Harrison in the summer of 1986 and began as a full-time lawyer at Schnader in September 1987. Any point the O'Donnell Plaintiffs intended to make is wrong.

cases, O'Donnell Plaintiffs minimize Mr. Schwartz' success as co-lead counsel in obtaining two Circuit Court reversals of District Court decisions dismissing 401(k)/403(b) excessive fee claims in *Davis v. Washington University* and *Mator v. Wesco Distribution*, suggesting that Schlichter Bogard should get credit for those victories and that in any event the $9.75 million-dollar recovery in those two cases pales in comparison to the various cases or Schlichter Bogard recovered more than $10 million. Opposition, Doc. [21], at 12-15. Of course, Chimicles Schwartz took account of Schlichter Bogard's prior victories (and defeats) in formulating their strategies and achieving their victories in *Davis* and *Wesco*, just like other plaintiffs lawyers, including Schlichter Bogard, relied heavily on Mr. Schwartz' victories in *Davis* and *Wesco* in prosecuting their clients' claims. That is what good lawyers do to maximize efficiency and success. In any event, some of the credit for Schlichter Bogard's prior victories goes to Chimicles Schwartz' consulting expert, who served as Schlichter Bogard's testifying and non-testifying expert in several of its cases.

Moreover, again reflecting the myopic of focus on excessive fee cases, in comparing the amount of experience and recoveries, O'Donnell Plaintiffs ignore the success of Messrs. Schwartz and Kriner in recovering almost $60 million in *In re Cigna-American Specialty Health Administrative Fee Litigation*, *Asner*, and *Snitzer*. As a result of those victories, particularly in *Asner*, and *Snitzer,* Messrs. Schwartz and Kriner received significant plaudits and notoriety (since so many prominent firms turned down those cases as too risky) from distinguished ERISA counsel (who represent both plaintiffs and defendants), whistleblowers, and officials from the Department of Labor, who entered into a joint prosecution agreement with Chimicles Schwartz in an ERISA case raising similar claims as those in *Snitzer*. Schwartz Reply Decl., ¶ 5.

In the context of Rule 23(g), quality is far more important than quantity. Both firms meet the quality test, but Chimicles Schwartz has an edge based on the diversity and breath of its qualitative track record.

3.  **Chimicles Schwartz investigated and named individual fiduciaries in anticipation of potential fiduciary delegation and statute of limitations defenses**

In investigating and asserting the class claims here, Chimicles Schwartz, based on its experience and knowledge, recognized potential defenses to be asserted for the period of class damages based on the ERISA statute of limitations and fiduciary delegation by Charter under ERISA and the Plan terms, and accordingly named three individual Defendants (in addition to John Doe placeholder Defendants) as fiduciary actors. As discussed in the Pitts/Jimenez Consolidation Response, the timing and naming of specific fiduciary Defendants has important potential implications for fiduciary liability and class damages; potential defenses of the various Defendants for actions by Charter and its delegates under the Plan's fiduciary delegation and liability provisions; statute of limitations defenses; and insurance coverage. *See* Doc. [22] at 7-9. Naming individual defendants represents a qualitative advantage of the *Pitts/Jimenez* complaint.

C.  **The Relevant Rule 23(g) Factors Support Appointment of Chimicles Schwartz**

Application of the Rule 23(g)(1)(A) factors supports appointment of Chimicles Schwartz.

1.  **Chimicles Schwartz' work in identifying or investigating class members' claims**

Contrary to suggestions in O'Donnell Plaintiffs' various papers, beginning in the summer of 2024, Chimicles Schwartz and its consulting expert conducted an extensive investigation wholly-independent from and without knowledge of any investigation conducted by Schlichter Bogard. *See* Motion, Doc. [18-2], at 7-8, 15-16, 18-19; *see also* Pitts/Jimenez Consolidation Response, Doc. [22], at 3 & n.1. Chimicles Schwartz' work in this case started long before

Schlichter Bogard first sent a pre-suit document request to Charter in November 2024. O'Donnell Plaintiffs' arguments regarding who filed suit first or who sent a pre-suit document request first are irrelevant to the interests of the class. *See* Motion, Doc. [18-2], at 18 & n.1) (citing cases); *see also Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1048 (9th Cir. 2015) ("It would be an abuse of discretion to appoint an attorney as class counsel solely because he may have won the race to the courthouse.").[11] Much more important are the more robust, unique allegations in the Pitts/Jimenez Complaint, including, as discussed above, naming specific individuals as defendants, providing detail regarding cash flows between the plan and Charter's related Accumulation Plan into and out of the Master Trust, contrasting the unambiguous Plan language regarding forfeitures with the forfeiture provisions of other large 401(k) plans, and providing information regarding the rate of expenses encompassed by the term "Plan administrative expenses." Motion, Doc. [18-2], at 19 & n.2; Pitts/Jimenez Consolidation Response, Doc. [22], at 7-9. *See In re Parking Heaters Antitrust Litig.*, 310 F.R.D. 54, 57 (E.D.N.Y. 2015) (holding that among the relevant factors for consideration is quality of the pleadings).

---

[11] O'Donnell Plaintiffs statement that Chimicles Schwartz "is only learning now" that Schlichter Bogard's pre-suit document request preceded Ms. Jimenez' request, Doc. [21] at 8, is literally true but apparently by a designed delay in disclosure by Schlichter Bogard. Pitts/Jimenez Plaintiffs asserted in their support of their Rule 23(g) motion that it appeared Jimenez served the first request for documents, which led the Plan to sign the Plan amendment eight days after the request in an effort to stem future damages. *See* Doc. [18-2] at 11. Pitts/Jimenez Plaintiffs asserted this because none of the three lawyers from the Schlichter firm had stated otherwise during Zoom conferences between Chimicles Schwartz and Schlichter Bogard when, in response to a question from Mr. Schlichter about the date of when Chimicles Schwartz sent the Jimenez document request, Mr. Schwartz readily provided the date of the Jimenez request and his belief about the potential causal connection with the Plan Amendment. Experienced counsel know counsel should confer in good faith prior to coming to the Court with competing multiple motions. *See, e.g.,* MANUAL FOR COMPLEX LITIG. § 10.22 (4th ed. 2004) (counsels' efforts to coordinate activities between themselves should be encouraged). Regardless, the important issue for the class is that Charter's reaction to amend the Plan in an effort to authorize future charges to participants for administrative fees evidences acknowledgement of the clear directive regarding use of Forfeited Plan Assets in the pre-Amendment Plan and Defendants' breaches of that directive.

### 2. Chimicles Schwartz' experience in class actions, other complex litigation, and the types of claims asserted in the action

Chimicles Schwartz' experience prosecuting the types of ERISA breach of contract claims, plus its consulting expert's extensive ERISA experience, is discussed above. O'Donnell Plaintiffs' arguments regarding Rule 23(g)(ii) focus myopically on their counsel's experience litigating excessive fee ERISA class actions while ignoring the other provisions of subsection (ii). The language of Rule 23(g)(ii) is not so narrow. Subsection (ii) first focuses on counsel's experience handling class actions generally. Counsel's recitations of their experience and greatest hits reflects that Messrs. Schwartz and Kriner and their firm have multi-decade class-action experience that is far deeper and more diverse than Schlichter Bogard's. Subsection (ii) next focuses on experience in "other complex litigation." Again, Messrs. Schwartz and Kriner and the Chimicles Schwartz firm have more experience and a more substantial track record in a far more diverse variety of complex litigations that not only includes ERISA class actions but also spans the gamut from products liability, consumer, employment, mass tort, medical monitoring, environmental, professional liability,[12] and investor and stakeholder representative actions, etc. In all the cases cited in connection with these proceedings, either Mr. Schwartz and Mr. Kriner (or both) served as either sole lead class counsel or co-lead class counsel with primary day-to-day responsibility prosecuting class members claims, and in each, they faced the finest defense counsel among the bar. Schwartz Reply Decl., ¶ 6. That broad, diverse experience in a broad range of complex cases will serve class members well, particularly in light of the creativity expected from Mayer Brown's top-shelf team. The subsection (ii) factors support appointment of Chimicles Schwartz.

### 3. Chimicles Schwartz' knowledge of applicable law

---

[12] Mr. Schwartz, in coordination with the court-appointed SEC's receiver, recently reached a $38 million settlement with a prominent law firm in connection with its role assisting convicted criminals who engaged in a Ponzi investment scheme. Schwartz Reply Decl., ¶ 11.

As discussed above, Chimicles Schwartz has deep knowledge and experience of the legal standards applicable not just to ERISA generally and ERISA breach of contract claims specifically based on 29 U.S.C. 1104(a)(1)(D), but also to a wide variety of other complex class on non-class cases. In addition, Chimicles Schwartz' consulting expert has decades of ERISA experience. Thus, if anything, subsection (iii) favors appointment Chimicles Schwartz.

### 4.     Chimicles Schwartz' resources and commitment

Both Chimicles Schwartz and Schlichter Bogard are successful firms with decades of experience representing their clients and class members. Nonetheless, the O'Donnell Plaintiffs surprisingly argue that subsection (iv) factor somehow favors Schlichter Bogard. Opposition, Doc. [21], at 5, 12-15. Schlichter Bogard's track record of aggressively prosecuting class members' claims, from start to finish, including trials and appeals, no matter how long it takes, is admirable, but no more admirable than Chimicles Schwartz' track record of doing the same. In a series of cases ranging from the *Exxon Valdez* oil spill litigation to *Wolens v. American Airlines* to litigation regarding Whirlpool/Kenmore front load washers, Mr. Schwartz and his firm have litigated cases before the United States Supreme Court, and Messrs. Schwartz and Kriner have litigated other cases before the Supreme Courts of Pennsylvania and Delaware. Schwartz Reply Decl., ¶ 7. Many of the firm's cases have required multiple trips to the circuit courts and Supreme Court and lasted more than a decade. *Id*. Many have also required the advancement of *millions* of dollars in out-of-pocket expenses. *Id*. While the Schlichter Bogard firm has an impressive array of large settlements and recoveries, none of the specific settlements and recoveries listed in the O'Donnell Plaintiffs'

papers exceeds $100 million.[13] In contrast, Mr. Schwartz has a long list of $100 million-plus recoveries for class members, including the *Philips CPAP MDL* ($1.7 billion recovery); *In re CertainTeed Shingles Litigation* (valued by court at between $687 to $815 million); *Wolens v. American Airlines* (valued by the court after contested valuation proceedings where the court hired its own independent valuation economic expert as between $95.6 million and $141.6 million); and the Exxon Valdez oil spill litigation (almost $2 billion). Mr. Kriner also has many settlements exceeding $100 million, including *In re Kinder Morgan, Inc. Shareholders Litigation* ($200 million) and *In re Genentech, Inc. Shareholders Litigation* (leading to a nearly $4 billion increase in the price paid to the Genentech stockholders). In each of these cases, Messrs. Schwartz and Kriner served as lead or co-lead counsel with primary day-to-day responsibility, except *Exxon Valdez* (where Mr. Schwartz played a significant role on the punitive damages team, including deposing Exxon's head of oil spill response, a key member of Exxon's executive committee (who ultimately became president of ExxonMobil Pipeline Co.), and a member of Exxon's Board of Directors) and *In re Certainteed* (where Mr. Schwartz served as chair of the discovery committee). Decl. of Steven A. Schwartz Doc. [18-3], ¶ 23.

Thus, the litigation staying power and monetary resources of both firms are more than sufficient and certainly do not tip the scale in favor of Schlichter Bogard. More important, however, is counsel's availability to litigate class members' claims in this case. Because Messrs. Schwartz and Kriner and their firm do not concentrate their practice in a large inventory of cases pursuant

---

[13] The Doles declaration (Doc. [21-4] at ¶ 16) references unnamed non-ERISA multidistrict litigations where unnamed lawyers at Schlichter Bogard served on "steering committees" and over $9 billion was recovered for claimants. These do not appear to be cases where Schlichter Bogard served as lead or co-lead counsel or assumed the type of leadership role as Messrs. Schwartz and Kriner did for each of the cases listed in the Pitts/Jimenez papers. To the extent relevant, Chimicles Schwartz has served in steering committee-type roles in dozens of cases that also resulted in recoveries in the billions of dollars. Schwartz Reply Decl., ¶ 6.

to a volume model, but instead *personally* litigate cases in which they serve as lead counsel on a day-to-day basis, they have sufficient time, and made a commitment, to do so in this case if appointed. *See* Motion, Doc. [18-2], at 15. Moreover, since Mr. Schwartz and Mr. Kriner recently resolved large cases, they have time to ensure this case is a priority and resources are promptly deployed to advance the interests of the class. Schwartz Reply Decl., ¶ 8. In contrast, it appears that the Schlichter Bogard firm has a voluminous inventory of cases, including a large number of active, hotly litigated cases, and nowhere in the O'Donnell Plaintiffs' papers do they identify which specific lawyers will take responsibility for the day-to-day prosecution of class members' claims. Indeed, they have advised the Court that the firm is unavailable to materially work on this case during April 2025 due to an upcoming trial. *See* Doc. [20] at 3-4 & Doc. [20-2] at 1.

### 5.     Other Relevant Rule 23(g) factors favor Chimicles Schwartz

In addition to the four factors set forth in Rule 23(g)(1)(A), courts may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Rule 23(g)(l)(B). For example, counsel's willingness to work cooperatively with others weighs in favor of appointment. *In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, 2:23-cv-01447, 2024 U.S. Dist. LEXIS 104130, at *16-18 (D. Nev. Jun. 12, 2024); *Brown v. Accellion, Inc.*, 5:21-cv-01155, 2023 U.S. Dist. LEXIS 23146, at *12 (N.D. Cal. Feb. 10, 2023). Chimicles Schwartz has a long track record of cooperatively working with co-counsel including counsel who have never worked with them before,[14] Schwartz Reply Decl., ¶ 9, and has emphasized its willingness to work cooperatively and efficiently with Schlichter Bogard if the Court deems it in the best interest of class members. Unfortunately, Schlichter Bogard has taken the opposite view.

---

[14] Indeed, in the Philips CPAP case, Mr. Schwartz never personally worked with any of the other three co-lead counsel chosen by the court.

O'Donnell Plaintiffs' Opposition persists in the inaccurate assertion that Rule 23(g) limits the Court's discretion to picking just one firm or the other to serve as interim class counsel even though Plaintiffs Pitts and Jimenez previously debunked that notion. *See* Motion, Doc. [18-2], at 8-9.[15] O'Donnell Plaintiffs double down and inaccurately miscite *Se. Mo. Hosp. v. C.R. Bard, Inc.,* No. 07-31-TCM, 2007 U.S. Dist. LEXIS 86392, at *3 (E.D. Mo. Nov. 21, 2007), as support for that misguided proposition. Not so. There the court simply decided to appoint one firm counsel as interim class counsel but exercised its discretion to reject that firm's request to appoint one of its co-counsel as liaison counsel. *Id*. at *5-6. In doing so the court specifically noted it had discretion to appoint an additional firm as liaison counsel. *Id*. at *6, citing *Miller v. Beazer Homes USA, Inc*., 2007 WL 3005332 *3 (N.D. Ga. 2007) (appointing interim liaison class counsel to act at the direction of, and assist, interim lead counsel). More important, in setting forth the relevant standards, the court, at *4, cited with approval *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006), where the court specifically rejected that proposition and appointed one lawyer from each of the four competing teams of applicants. *Id.* at *57-59.[16]

---

[15] O'Donnell Plaintiffs miscite *In re Data Breach Sec. Litig. Against Caesars Ent., Inc*, 2024 U.S. Dist. LEXIS 104130 (D. Nev. Jun. 12, 2024) for the proposition that only "a single firm shall be appointed." There, the court simply appointed one group of lawyers over another group, and noted that "there is nothing to suggest that a larger group of attorneys than the Second Cohort's team could not work efficiently." *Id*. at *19. Their citation to *In re Aurora Dairy Corp*., 2008 U.S. Dist. LEXIS 32189 (E.D. Mo. April 18, 2008), is also misplaced. There, Judge Weber simply appointed the group of lawyers that had "the better plan." *Id*. at *18. Here, the interim counsel applicants have not identified competing litigation plans (other than Chimicles Schwartz referencing its extensive success in winning summary judgment in breach of contract cases).

[16] O'Donnell Plaintiffs' other citations on this point are also inapposite. *Khunt v. Alibaba Group Holding Ltd.* 2021 U.S. Dist. LEXIS 31207, *Montag v. Volkswagen AG*, 2021 U.S. Dist. LEXIS 169033, and *Basile v. Valeant Pharms. Int'l, Inc.* 2015 U.S. Dist. LEXIS 192315 were cases involving claims under the Private Securities Law Reform Act. Rule 23(g) does not apply to PSLRA cases, since the PSLRA statute requires courts to permit the plaintiff with the largest losses to choose interim class counsel. *Khan v. Bd. of Dirs. of Pentegra Defined Contribution Plan*, 2021 U.S. Dist. LEXIS 31207 is inapposite for the reasons set forth in the Motion, Doc. [18-2] at 19-20 & n.3.

Schlichter Bogard next asserts that there are "philosophical differences" that would make any co-lead structure unworkable, but provides only one example about alleged philosophical differences (regarding consolidation) which was based on a mistaken assumption that would have been readily cleared up if Schlichter Bogard had simply picked up the phone. *See* Pitts/Jimenez Consolidation Response, Doc. [22] at 3-4. In fact, no philosophical differences have been raised, much less discussed and evaluated, between the two firms. *Id*. at 4 & n.3.

Schlichter Bogard next raises concerns about potential increase in costs if more than one firm is appointed, but that concern presents no problem here or any case for that matter, as counsel are always bound to control costs and staffing and will, of course, do so here. Courts rarely are concerned with appointing two firms to serve as interim class counsel, and in fact routinely do so (even, contrary to Schlichter Bogard's suggestion, when such firms have never previously work together), and any firm or firms appointed to serve as interim class counsel have the responsibility to work efficiently, which is also done routinely and effectively. Schwartz Reply Decl., ¶ 9. In virtually all, if not all, of both firms' ERISA class actions, they have sought fees calculated as a percentage of the recovery, which minimizes any potential impact of class members of any potential overbilling.

All these arguments are red herrings to attempt to justify an exclusive role. From the cases discussed in the O'Donnell Plaintiffs' papers, it appears that Schlichter Bogard almost never meaningfully works with co-counsel. While that is a preference the firm is entitled to have, it seems contrary to the intent of Rule 23(g)(l)(B) for a firm to leverage its inability or refusal to work with will qualify, cooperative co-counsel to obtain appointment as sole interim class counsel.

## V.    CONCLUSION

The Court should appoint Messrs. Schwartz and Kriner and Chimicles Schwartz as Interim Class Counsel or, alternatively, appoint Chimicles Schwartz and Schlichter Bogard as Co-Lead Interim Class Counsel.

Dated: March 26, 2025

Respectfully submitted,

*/s/ Steven A. Schwartz*
Steven A. Schwartz (*pro hac vice*)
**CHIMICLES SCHWARTZ KRINER**
**& DONALDSON-SMITH LLP**
361 Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 645-4720
steve@chimicles.com

Robert J. Kriner, Jr. (*pro hac vice*)
**CHIMICLES SCHWARTZ KRINER &**
**DONALDSON-SMITH LLP**
2711 Centerville Road - Suite 201
Wilmington, DE 19808
Telephone: 302-656-2500
rjk@chimicles.com

James J. Rosemergy
**CAREY, DANIS & LOWE**
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Telephone: (314) 725-7700
jrosemergy@careydanis.com

*Attorneys for Plaintiffs John Pitts and Maria Jimenez*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 26th day of March, 2025, a true copy of the foregoing was filed electronically using the Court's CM/ECF system, to be served via operation of the Court's electronic filing system upon all counsel of record.


          */s/ Steven A. Schwartz*
           Steven A. Schwartz