UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK O'DONNELL, et al., *individually and as representatives of a class of participants and beneficiaries on behalf of the* CHARTER COMMUNICATIONS, INC. 401(K) SAVINGS PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC., et al.,<br><br>Defendants. | ) | Case No. 4:25-CV-157-ZMB |

**MEMORANDUM AND ORDER**

Before the Court is Defendants' Motion to Dismiss. Doc. 38. Because Plaintiffs have failed to allege that the individual Defendants engaged in any relevant conduct and because ERISA's anti-inurement and prohibited-transaction provisions do not cover the challenged actions, the Court dismisses those claims without prejudice. However, the Court denies the remainder of Defendants' motion because Plaintiffs adequately pled that Charter breached several fiduciary duties.

**BACKGROUND**

**I. Factual Background[1]**

Defendant Charter Communications is a publicly traded telecommunications and mass media company with more than 94,000 employees and $55 billion in annual revenue. Doc. 37 ¶ 13. Charter is the sponsor and fiduciary of a 401(k) Savings Plan for its employees. *Id.* ¶¶ 1, 14. The Plan is a defined contribution, individual account employee benefit plan governed by ERISA. *Id.* ¶ 33. Each account is funded through a combination of wage withholdings and Charter's matching contributions.

[1] The Court accepts as true the following well-pled facts for the purposes of this motion. *See infra* at 3.

*Id.* ¶¶ 37–39. While participants' contributions vest immediately, Charter's matching contributions vest only after several years of service. *Id.* ¶ 39. If a participant leaves Charter before vesting, the unvested matching contributions revert to a separate "forfeiture" account and remain as Plan assets. *Id.* ¶ 40.

The Plan dictates the acceptable use of these forfeitures. *Id*. Between 2017 and 2024, the Plan directed that "Assets in Accounts which are forfeited shall be used to pay Plan administrative expenses [before] reduc[ing] the Employer Contributions." *Id.* ¶ 43 (emphasis omitted). Another provision reiterates that "[a]ll expenses of administration of the Plan . . . shall be paid out of forfeitures, if any." *Id.* ¶ 44 (emphasis omitted). Nonetheless, Charter used the assets to reduce its own contributions without first paying administrative expenses. *Id.* ¶¶ 46–47. In total, between 2020 and 2024, Charter applied $189.5 million of forfeited assets to reduce its contributions, while Plan participants were charged $40.9 million in administrative expenses. *Id.* ¶ 47. Each of the named Plaintiffs invested in the Plan, were improperly charged administrative fees during the relevant period, and remain active Plan participants. *Id.* ¶¶ 8–12. In 2025, Charter amended the Plan to allow forfeited assets to offset employer contributions before paying administrative expenses. *Id.* ¶¶ 67–69.

## II. Procedural Background

Plaintiffs, a collection of former Charter employees, *id.* ¶¶ 8–12, brought this action in 2025 on behalf of themselves and other affected employees, Doc. 1. After a hearing, the Court consolidated two cases asserting identical claims and appointed co-lead interim class counsel, who filed a Consolidated Complaint. Docs. 34, 37. The putative class asserts six counts: three claims for breach of various fiduciary duties, *id.* ¶¶ 83–100; a violation of ERISA's anti-inurement provision, *id.* ¶¶ 101–04; and two claims for prohibited transactions under ERISA, *id.* ¶¶ 105–116. Defendants subsequently filed a Motion to Dismiss Case, which is fully briefed and ripe for review. Docs. 38–40, 43. The parties have since filed respective notices of supplementary authority. Docs. 44, 45.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such motions "is to test the legal sufficiency of the complaint." *Ford v. R.J. Reynolds Tobacco Co.*, 553 F. Supp. 3d 693, 697 (E.D. Mo. 2021). To survive a Rule 12(b)(6) motion, the complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief" and providing notice of the grounds on which the claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). Additionally, the complaint must include sufficient detail to make a claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "[s]pecific facts are not necessary," the plaintiff must include "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quotations omitted). The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *Id.*

At the motion-to-dismiss stage, the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025) (citation omitted). However, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (citation omitted); *see also Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). Ultimately, this analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## DISCUSSION

As an initial matter, Plaintiffs have failed to state a claim against the individual Defendants because the Consolidated Complaint does not allege any specific conduct on their part. As for Charter, Plaintiffs have pled viable claims for breach of various fiduciary duties under the plain language of the Plan. But Charter is correct that Plaintiffs fail to state a claim on the remaining counts because the forfeited assets never left the Plan and were used only to pay Plan benefits. Accordingly, the Court grants in part and denies in part Defendants' Motion to Dismiss.

### I. Claims Against Individual Defendants

First up is Defendants' claim that Plaintiffs have failed to adequately allege that Defendants Carolyn Wood, Paul Weber, and John Does 1-10 were fiduciaries subject to personal liability. Doc. 39 at 15. Plaintiffs emphasize that the Consolidated Complaint identifies "Wood and Weber as Plan Administrators" with "responsibility over the allocation of forfeitures." Doc. 40 at 15. And they contend that it is reasonable to infer that the individual Defendants breached their fiduciary duties by exercising their control as plan administrators over the forfeitures. *Id.* The Court disagrees.

While information about the exact duties performed by Plan Administrators may be uniquely in Defendants' possession, *see id.*, Plaintiffs have failed to allege—even upon information and belief—that the named individuals took or failed to take *any* actions regarding forfeitures. Nor do Plaintiffs suggest that these Defendants were even aware of how these assets were allocated. *See* 29 U.S.C. § 1105(a) (requiring knowledge or specific omissions for co-fiduciary liability). As such, Plaintiffs have failed to demonstrate individual liability, "as they must in order to bring an ERISA claim against a fiduciary in their individual capacity." *See Munro v. Univ. of S. Cal.*, 2019 WL 4543115, at *5 (C.D. Cal. Aug. 27, 2019) (citation omitted); *see also Dardaganis v. Grace Cap.,* 889 F.2d 1237, 1241–42 (2d Cir. 1989) (recognizing that, generally, individuals "are liable as fiduciaries under section 1109 only if they personally breach a fiduciary duty"). Given that this defect could be remedied, however, the Court dismisses the individual Defendants without prejudice.

## II. Breach of Fiduciary Duty Claims

Next are Plaintiffs' claims for breach of fiduciary duty under 29 U.S.C. § 1104. To state a claim under this provision, "a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan." *Braden*, 588 F.3d at 595 (citations omitted). A fiduciary can breach its duties by failing to act "in accordance with the documents . . . governing the plan." 29 U.S.C. § 1104(a)(1)(D); *Dardaganis*, 889 F.2d at 1241–42 (describing this scenario as a breach "in itself"). ERISA also "imposes upon fiduciaries twin duties of loyalty and prudence." *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019) (citation omitted).

Charter contends that Plaintiffs fail to plead a breach of any fiduciary duty. Doc. 39 at 4–12. Specifically, it characterizes Plaintiffs' claim for failure to follow Plan documents as a disguised denial-of-benefits claim, which would require administrative exhaustion. *Id.* at 7–8. The company also argues that offset contributions with forfeitures is not a fiduciary breach, as recognized by many courts, *id.* at 4–5 (collecting cases), and that any loss to the Plan is speculative, *id.* at 11–12. Plaintiffs counter these arguments by first clarifying that they are not arguing that the allocation of forfeitures to offset employer contributions is *necessarily* a fiduciary breach. Doc. 40 at 1. Rather, and unlike most ERISA forfeiture cases, the breach here stems from the fact that the Plan required these assets to apply first to administrative fees. *Id.* Further, Plaintiffs contend that this is not a denial-of-benefits claim because they challenge plan-wide violations as opposed to individualized benefit denials. *Id.* at 5–6. The Court agrees with Plaintiffs and will addresses each point in turn.

### *a. Exhaustion*

First, the Court finds that this is not a disguised denial-of-benefits action requiring exhaustion, at least as to fees affecting the Plan itself. Charter points to Eighth Circuit precedent requiring exhaustion for "plan-based claims 'artfully dressed in statutory clothing." Doc. 43 at 3 (citing *Jones v. Aetna Life Ins.*, 943 F.3d 1167, 1169 (8th Cir. 2019)). But that characterization is unavailing.

Here, Counts I-III are distinguishable from the disguised denial-of-benefits claims in *Jones* and similar precedent.[2] Those cases generally involve denial-of-benefits claims brought by individual plaintiffs seeking damages for individual injuries rather than broader, plan-based equitable relief. *See, e.g.*, *Jones*, 943 F.3d at 1168; *Tucker v. Express Scripts Health & Welfare Benefits Plan*, No. 4:20-CV-987-NCC, 2021 WL 1857109, at *7 (E.D. Mo. May 10, 2021). Here, Plaintiffs seek equitable relief under 29 U.S.C. § 1132(a)(3) for various breaches of fiduciary duties. Doc. 37 at 32–33 (seeking disgorgement and other equitable remedies); *cf. J.W. ex rel. Williams v. Cigna Health & Life Ins. Co.*, No. 4:21-CV-324-SRC, 2021 WL 5415051, at *3 (E.D. Mo. Nov. 19, 2021) (construing claim for breach of fiduciary duty as disguised denial-of-benefits claim because the complaint sought only compensatory damages). More importantly, Plaintiffs seek to recover administrative expenses like recordkeeping fees that affect the entire Plan, not just benefits for individual participants. As such, the Court finds that at least these broader claims do not require exhaustion, with Charter free to renew this affirmative defense regarding any attempt to recover individualized benefits at a later stage.

***b. Breach of Plan Documents***

The next question—what the Plan language required of Charter—is simple to answer. During the relevant timeframe, the Plan directed that "Assets in Accounts which are forfeited shall be used to pay Plan administrative expenses" before any excess could be used to offset employer contributions. Doc. 37 ¶ 43. Federal courts apply "federal common law rules of contract interpretation to discern the meaning of the terms in an ERISA plan." *Greater St. Louis Constr.*

---

[2] The Eighth Circuit has yet to resolve whether ERISA claims for breach of fiduciary duty require exhaustion. *See Jones*, 943 F.3d at 1169 (declining to address the issue). However, the Court finds the majority view—that exhaustion is not required—to be more persuasive, and particularly the Fourth Circuit's explanation regarding ERISA's distinct mandates for internal review of benefits versus statutory claims. *See Smith v. Sydnor*, 184 F.3d 356, 364 (4th Cir. 1999); *see also Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 563–64 (6th Cir. 2017) (listing cases).

*Laborers Welfare Fund v. RoadSafe Traffic Sys.*, 55 F.4th 609, 612 (8th Cir. 2022). Under relevant precedent, contracts must be interpreted according to "their plain and ordinary meaning." *Hankins v. Crain Auto. Holdings*, 129 F.4th 1088, 1093 (8th Cir. 2025). The Court considers "the entire contract to determine whether a term is ambiguous on its own or in context." *Id.*

The core of Charter's argument is that Plaintiffs seek to recover fees that do not qualify as "administrative expenses" under the Plan. Doc. 39 at 9–10. In particular, the company highlights Section 11.3, which defines "administrative expenses" to include "legal fees, agents' fees, costs of supplies, auditing fees, and other costs of operation." *Id.*; Doc. 39-1 at 40. Charter contends that, under basic principles of textual interpretation, the catch-all term "other costs of operation" is limited to fees similar to the antecedent terms. Doc. 39 at 9. Indeed, accepting this argument would sharply reduce the fees Plaintiff could recover by excluding "investment expenses." Doc. 43 at 5–6. But Charter concedes that "administrative expenses" includes "expenses that the Plan may incur at the Plan level rather than at the level of any individual account." *Id.* at 7. And at this stage, it is reasonable to infer that the Plan itself would incur at least a portion of the recordkeeping fees that the Consolidated Complaint pleads. *See* Doc. 37 ¶¶ 55–58. Thus, the Court reserves ruling on the question of whether administrative expenses encompass individual investment fees,[3] as it is clear that Plaintiffs have pled at least a limited breach of plan documents.

***c. Breach of Duties of Loyalty and Prudence***

Based on similar reasoning, Plaintiffs have met their burden of alleging a breach of the fiduciary duties of loyalty and prudence. Charter contends that using forfeitures to reduce employer contributions is entirely anodyne. Doc. 39 at 4–7. While that generally may be true, the many cases on which Defendants rely differ in one crucial respect. Namely, they involved plans that either

[3] As some fees are potentially recoverable even if deferring to the Plan Administrator's interpretation of "Expenses of Administration," the Court need not determine the deference owed to that interpretation at this time. *See* Doc. 43 at 9–11.

required or gave discretion to apply forfeitures to offset employer contributions in the first instance. *See id.* at 4 n.3 (collecting cases). In contrast, the plain language of the Plan required Charter to allocate forfeitures to administrative expenses (whatever that entails) before reducing its contributions. Courts have refused to dismiss fiduciary-breach claims based on similar language in other plans. *See, e.g.*, *Stewart*, 2025 WL 3098085, at *7–8; *Gardner-Keegan v. W.W. Grainger, Inc.*, 2026 WL 194772, at *9–10 (N.D. Ill. Jan. 26, 2026). That same reasoning applies here.

Defendants argue for the first time in reply that Plaintiffs rely on the breach of the plan documents as a "silver bullet" to save their claims for breach of loyalty and prudence. Doc. 43 at 11. At this stage, it is reasonable to infer that this conduct shows that Charter was acting in its own interests and based on a "flawed decision-making process." Doc. 37 ¶¶ 89–100. While Charter's argument may prove persuasive if properly buttressed by discovery, for now, Plaintiffs have adequately pled claims for breach of the duties of loyalty and prudence.

***d. Loss to the Plan***

Charter contends that, even if Plaintiffs have established a fiduciary breach, they still have failed to allege a resulting loss to the Plan. Doc. 39 at 11–12. The company states that Plaintiffs' loss theory is speculative in that it relies on the idea that Charter would have increased contributions to cover the difference if it had been required to apply the forfeitures towards administrative fees. *Id.* at 11. Plaintiffs respond by distinguishing the cases Charter cites, noting that those plans "would not have obligated the company to use cost savings for the participants' benefit." Doc. 40 at 14 n.7 (citations omitted). But here, Charter was required to make matching contributions to employee contributions. *Id.* at 14. Moreover, Plaintiffs assert that Plan assets would be higher with the administrative fees offset, making the loss obvious. *Id.* at 15.

The Court agrees that the alleged injury is clear and not impermissibly speculative. The Consolidated Complaint plainly identifies the loss—the exposure to administrative fees resulting from Charter's failure to correctly apply forfeitures. Doc. 37 ¶¶ 49–54. And it is also reasonable to infer that Charter would not have unilaterally decided to withhold matching funds, particularly if the company is correct that such expenses would have been limited to recordkeeping services and Plan legal fees. *See In re: UnitedHealth ERISA 401(k) Litig.*, 2026 WL 1786167, at *4 (D. Minn. June 22, 2026). Accordingly, Plaintiffs have sufficiently alleged a loss to the plan.

**III. Anti-Inurement Claims**

Plaintiffs also assert that Charter violated ERISA's anti-inurement provision, alleging that its failure to apply forfeitures in compliance with the Plan's hierarchy "caused the assets of the Plan to inure to the benefit of Charter." Doc. 37 ¶ 103. In moving to dismiss, Charter argues that a viable anti-inurement claim must establish that assets were not "used to pay pension benefits to plan participants," and specifically that assets left the plan. Doc. 39 at 12–13 (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999)). Plaintiffs counter with precedent indicating that the crux of an anti-inurement violation is the use of plan assets to "benefit a contributing employer," not necessarily that assets were removed. *Id.* (quoting *Bd. of Trs. of the M.M. & P. Health & Benefit Plan v. Grand River Navigation Co.*, 2021 WL 1215060, at *9 (D. Md. Mar. 30, 2021)). Along these lines, they argue that Charter gave itself a greater-than-incidental benefit by using the forfeitures to offset its contributions rather than to reduce administrative fees. *Id.* Charter's arguments are more persuasive.

ERISA requires that, with limited exceptions, "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). In interpreting this provision, the Supreme Court explained that the anti-inurement inquiry "focuses exclusively on whether fund assets were used to pay pension

benefits to plan participants." *Hughes Aircraft Co.*, 525 U.S. at 442; *see also Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22, (2004) ("The provision demands only that plan assets be held for supplying benefits to plan participants."). "Although there is 'scant caselaw discussing the precise elements of a *prima facie* claim of violation of ERISA's anti-inurement provision,'" courts generally have recognized "that allegations of 'indirect' benefits inuring to an employer are insufficient to state [a] claim under Section 403(c)(1)." *See, e.g.*, *Krohnengold v. N.Y. Life Ins. Co.*, 2022 WL 3227812, at *10 (S.D.N.Y. Aug. 10, 2022) (citing *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 88 (2d Cir. 2001)); *Jacob v. RTX Corp.*, 817 F. Supp. 3d 341, 352 (E.D. Va. 2026) (citations omitted).

Here, Plaintiffs cannot credibly suggest that the forfeited assets were not used to benefit participants. *See Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870 (D. Ariz. 2025) ("When forfeited assets are reallocated to participants' accounts via employer contributions, the participants' accounts increase—an obvious benefit."). True, the instant scenario differs from other ERISA forfeiture cases because Charter lacked discretion under the Plan to apply forfeitures to offset its contributions before paying administrative expenses. But while Plaintiffs may ultimately recover for that wrong under their fiduciary-breach claims, their anti-inurement claim fails because Plaintiffs do not allege that the forfeited assets ever left the Plan.[4] Indeed, Plaintiffs' own supplemental authority draws this distinction, dismissing an anti-inurement claim even after allowing two fiduciary-breach claims to proceed. *See UnitedHealth*, 2026 WL 1786167, at *5–7; *see also Parker v. Tenneco Inc.*, No. 23-10816, 2026 WL 852046, at *6 (E.D. Mich. Mar. 27, 2026) ("Although the forfeitures were not used in the manner Plaintiffs preferred, [forfeitures] used as a substitute for future employer contributions . . . remain in the Plans and are still being used to provide benefits to participants in the plan." (quotations and alterations omitted).

[4] As an afterthought, Plaintiffs insist they "*do* allege that assets improperly 'left the Plan,'" but their focus on "non-forfeited" assets dooms this point, *see* Doc. 40 at 13, as their claim alleges this misuse of forfeited assets, Doc. 37 ¶ 103.

Plaintiffs emphasize that a few courts have held that applying forfeitures to employer contributions can constitute an unlawful inurement. *See* Doc. 40 at 11–12 (collecting a few cases). But the vast majority of courts to consider this issue have reached the opposite conclusion, at least where no assets have left the plan. *See Madrigal v. Kaiser Found. Health Plan,* 2025 WL 1299002, at *6 (C.D. Cal. May 2, 2025) (collecting cases). This conclusion is further buttressed by the structure of the limited exceptions to ERISA's anti-inurement provision. Subsequent sections relate to actions involving the *removal of plan assets* such as in the case of inadvertent overpayments as a result of mistake, 29 U.S.C. § 1103(c)(2)(A), or when contributions are conditioned on certain approvals that do not occur, *id.* § 1103(c)(2)(B)–(C). In other words, the exceptions each revolve around active removal of plan assets by employers, not incidental benefits gained as a result of redistribution of plan resources. As such, Plaintiffs' "failure to allege that any assets left the Plan is sufficient to foreclose [their] claim." *See Madrigal,* 2025 WL 1299002, at *6.

**IV. Prohibited-Transactions Claims**

Last, Plaintiffs allege that Charter engaged in two types of transactions prohibited by ERISA. First, they assert that the Plan engaged in a transaction "with a party in interest." Doc. 37 ¶ 106 (citing 29 U.S.C. § 1106(a)(1)). Second, they state that the Plan impermissibly engaged with a fiduciary. *Id.* ¶ 113 (citing 29 U.S.C. § 1106(b)). Charter contends that both claims fail because forfeiture allocations are not "transactions" for the purposes of the applicable statute, given that no money was allocated to a party or entity outside the Plan. Doc. 39 at 13–15. In response, Plaintiffs argue that ERISA also prohibits "indirect transfers" that benefit a party in interest, and that Charter clearly benefitted given its reduced contribution obligations. Doc. 40 at 13–14. But the weight of authority indicates that allocation of forfeitures within a plan does not constitute a "transaction."

As with the anti-inurement claims, it is critical that Plaintiffs challenge the distribution of forfeited assets *within* the Plan rather than alleging that the forfeitures improperly *left* the Plan. Doc. 37 ¶¶ 114. The Consolidated Complaint "establishes that forfeitures remained in the Plan and were simply shifted to other employees in the form of contributions." *Gardner-Keegan*, 2026 WL 194772, at *11; *see also UnitedHealth,* 2026 WL 1786167, at *7–8 (collecting cases). *Gardner-Keegan* is particularly persuasive because it dealt with a very similar provision requiring the payment of reasonable administrative expenses before allocation to matching contributions. 2026 WL 194772, at *11. But as that court noted, plaintiffs' argument would "classify *any* intra-plan transfer of funds to offset employer contributions—even if expressly permitted in a plan—as a violation of 29 U.S.C. § 1106." *Id.* (emphasis in original). The Court declines to apply ERISA's prohibition-transaction provision that far and, accordingly, dismisses these claims.

## CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' [38] Motion to Dismiss. Specifically, the Court **DISMISSES** Defendants Carolyn Wood, Paul Weber, and John Does 1–10, **DISMISSES** Counts IV-VI in their entirety, but **DENIES** the remainder of Defendants' Motion to Dismiss.

So ordered this 14th day of September 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE